**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ISAAC KELVIN ALLEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 16-0708 (CKK) |
| | : | |
| FEDERAL BUREAU OF PRISONS, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

Isaac Kelvin Allen ("plaintiff") brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the Federal Bureau of Prisons ("BOP"), a component of the United States Department of Justice ("DOJ"). This matter is before the Court on Defendant's Renewed Motion for Summary Judgment, ECF No. 27. For the reasons discussed below, the Court will grant the motion in part and deny the motion in part without prejudice.

## I. BACKGROUND

In January 2008, in the United States District Court for the Middle District of Florida, plaintiff was convicted of making false statements in violation of 18 U.S.C. § 1014 and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Mem. in Support of Def.'s Renewed Mot. for Summ. J. ("Def.'s Mem."), Ex. 1 ("Mack Decl.") ¶ 2. The court imposed a prison term of 198 months which plaintiff began to serve at the Federal Correction Complex in Coleman, Florida ("FCC Coleman"). Mack Decl. ¶ 2; *see id.*, Attach. 1 at 5. BOP transferred plaintiff to the United States Penitentiary in Beaumont, Texas ("USP Beaumont") in February 2012. *Id.*, Attach. 1 at 5.

1

The Trust Fund Limited Inmate Computer System ("TRULINCS") is the means by which

inmates in BOP custody "can exchange electronic messages with the public." Def.'s Mem. at 2.

"Use of TRULINCS is a privilege [which] the Warden may limit or deny . . . a particular

inmate." Program Statement 4500.11, Trust Fund/Deposit Fund Manual (Apr. 9, 2015) at 127.

"Plaintiff's access to . . . TRULINCS . . . is under a 21 year suspension," yet the BOP allegedly

"has never . . . presented [him] an official copy of the reason" for the suspension. Compl. ¶ 6.

Plaintiff filed an Administrative Remedy Request in June 2015 for "a copy of the 'written

explanation' responsible for his TRULINCS messaging suspension." *Id*. ¶ 8. The Warden

responded:

> Program Statement 4500.11, Trust Fund/Deposit Manual, Chapter
> 14, Page 29, states, "Inmates whose offense, conduct, or other
> personal history indicates a propensity to offend through the use of
> email or jeopardizes the safety, security, orderly operation of the
> correctional facility, or the protection of the public or staff, should
> be seriously considered for restriction." Therefore, in accordance
> with policy, you are not currently approved to utilize the inmate
> TRULINCS system based on your current offense, conduct, and/or
> other history. There is a written explanation located in the FOIA
> section of your central file, however, because of the location of the
> written explanation, a copy is not available to you at the local level.
> If you would like to pursue this matter, you would need to submit a
> request for release of information from the FOIA section to: Central
> [O]ffice, Director, Federal Bureau of Prisons, 320 First Street NW,
> Washington DC 20534.

Compl., Attach. 1. Plaintiff appealed the Warden's response to the Regional Director, who

explained:

> The Warden appropriately responded to your request. On March 9,
> 2012, the Chief Executive Officer determined your Public
> Messaging capabilities would be suspended until December 31,
> 2037. This decision was based on your continued fraudulent activity
> to include: Counterfeiting or Forging Document, Lying or
> Falsifying Statement, Using Mail without Authorization, Using
> Unauthorized Equipment, and Disruptive Conduct – Greatest.

*Id*., Attach. 2.

By letter dated December 7, 2015, plaintiff submitted a FOIA request to the BOP's

Central Office. Mack Decl. ¶ 9. He referred to the responses of the Warden and Regional

Director to his Administrative Remedy request, and "requested the written explanation . . .

regarding the suspension of [his] TRULINCS privileges and the determination by the Chief

Executive Officer on March 9, 2012 to suspend [his] public messaging capabilities until

December 31, 2037." Def.'s Mem., Ex. 2 ("Supp. Mack Decl.") ¶ 4. BOP received the request

on December 29, 2015. Mack Decl. ¶ 9. Staff assigned the request a tracking number (2016-

01713) and forwarded it to the BOP's South Central Regional Counsel's Office ("SCRO") for

processing. *See id*. ¶¶ 9-11. Staff determined that responsive records would most likely be

found in plaintiff's central file, which ordinarily includes "documents relating to the inmate's

sentence[] (such as the Pre-Sentence Investigation Report, Judgment and Commitment Order,

Statements of Reasons, etc.), detainer information, inmate financial responsibility program

documents, classification data, and parole information," and "is maintained at the inmate's

current designated institution." *Id*. ¶ 10. SCRO staff, in turn, contacted the Legal Liaison at the

Federal Correction Complex in Beaumont, Texas by email with instructions to search plaintiff's

central file. *See id*.

On January 4, 2016, the BOP notified plaintiff that it had received his FOIA request,

Compl. ¶ 10, and that it needed more time to process it:

> We determined exceptional circumstances exist as the documents
> responsive to your request must be searched for or collected from a
> field office, and/or the documents responsive to your request are
> expected to be voluminous and will require significant time to
> review, and/or your request requires consultation with at least one
> other agency with substantial interest in your request. Because of
> these unusual circumstances, we are extending the time limit to
> respond to your request beyond the ten additional days provided by
> the statute. Processing complex requests may take up to nine
> months.

Def.'s Mem., Ex. 3 at 1.

A Case Manager at USP Beaumont searched plaintiff's central file on January 5, 2016, and found 11 pages of responsive records. Mack Decl. ¶ 11; *id*., Attach. 3. On January 12, 2016, the BOP released two pages in full, released seven pages in part, and withheld two pages in full, relying on FOIA Exemptions FOIA Exemptions 7(C), 7(E) and 7(F). *Id*. ¶ 12; Supp. Mack Decl. ¶ 6. For reasons unknown, plaintiff did not receive the BOP's response. Request to Deny Def.'s Mot. to Dismiss and/or Summ. J., ECF No. 13 ¶¶ 1, 4-5. The BOP hand-delivered a copy of its response to plaintiff on August 17, 2016. Supp. Mack Decl. ¶ 5; *see* Notice, ECF No. 23, Ex. A.

The responsive records were copies of two reports. The first was a "Special Investigative Services SIS Report . . . from [FCC Coleman] describing the investigation of [p]laintiff's identity theft and tax fraud scheme" conducted by FCC Coleman staff and concluded in July 2011. Supp. Mack Decl. ¶ 5a. The second was "a . . . report titled TRULINCS Restricted or Limited Access Request ('TRULINCS Report'), from USP Beaumont, which was generated in February – March 2012[.]" *Id*. ¶ 5b. An "investigator recommended that [p]laintiff's TRULINCS access be restricted upon his arrival at FCC Beaumont[, and t]he Warden of USP Beaumont concurred in the recommended as shown by his signature on the report on March 9, 2012. *Id*.; *see id*., Attach. 4 at 1.

The decision to restrict plaintiff's TRULINCS access was based on his presentence investigation report, his disciplinary record, and the SIS report:

> [Plaintiff] was filing fraudulent tax returns and instructing other inmates how to file fraudulent tax returns. Additionally, [plaintiff] was assigned as the Education Clerk and used his position to obtain social security numbers driver[] license [numbers], date[s] of birth, place[s] of birth, and mother[s'] maiden name[s] of several inmates. [Plaintiff] used a computer in the Education Department to store this

information. [He] misused the legal mail system to send out unauthorized mail to a personal address.

*Id*., Attach. 4 at 2-3.

Plaintiff claims that the BOP violated the FOIA by failing to respond to his FOIA request within statutory time limits and by extending the deadline for its response unnecessarily. *See* Compl. ¶¶ 11-16. Now that he has received documents from the BOP, plaintiff contends that the SIS reports "are **NOT** the documents referenced in FOIA Request 2016-01713." Request to Deny Def.'s Renewed Mot. for Summ. J., ECF No. 29 ("Pl.'s Opp'n") ¶ 25 (emphasis in original). Neither report contains a "'written explanation' or a 'determination by the CEO' as stated in the Administrative Remedy from the Warden and Regional Director." *Id*. Thus, plaintiff "asserts that the [BOP] has not adequately searched [for] or produced records responsive to [his] request." *Id*. Further, even though the reports purportedly are not responsive to his FOIA request, plaintiff claims that the BOP "still improperly redacted information" from them. *Id*. ¶ 26.

## II. DISCUSSION

### A. Summary Judgment in a FOIA Case

A FOIA case typically is resolved on a motion for summary judgment. *See Petit-Frere v. U.S. Attorney's Office for the Southern District of Florida*, 800 F. Supp. 2d 276, 279 (D.D.C. 2011) (citations omitted), *aff'd per curiam*, No. 11-5285, 2012 WL 4774807, at *1 (D.C. Cir. Sept. 19, 2012). The Court grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An agency may meet its burden solely on the basis of affidavits or declarations, *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999), as long as they "describe the documents and the justifications for nondisclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the claimed

exemption, and are not controverted by either contrary evidence in the record [or] by evidence of

agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote

omitted).

*B. Timeliness of the BOP's Response*

On January 4, 2016, the BOP notified plaintiff that additional time was required because

responsive records would have to be searched for or collected from a field office, that is, the

South Central Regional Office and, in turn, USP Beaumont. Plaintiff doubts that there were

circumstances so extraordinary as to justify the BOP's request for additional time. *See* Pl.'s

Opp'n ¶¶ 18-20. He claims to have been misled: he "would <u>not</u> have brought this suit if [he had]

received an honest determination from the [BOP] on January 4, 2016." Supp. Decl. of Isaac

Kelvin Allen in Direct Opp'n of Supp. Decl. of Violet Mack, ECF No. 33 ("Pl.'s Supp. Decl.") ¶

10 (emphasis in original). Now he has "incur[ed] the cost of: filing[,] materials[,] postage, and[]

time away from [his] institutional job." *Id*.; *see* Pl.'s Opp'n ¶ 3. Although the BOP claimed that

extraordinary circumstances would require a delay of up to nine months to process his request,

plaintiff notes that BOP staff spent a mere 30 minutes to locate responsive records. Pl.'s Resp. to

Def.'s Reply in Support of Renewed Mot. for Summ. J., ECF No. 35 ("Surreply") at 3-4; *see id*.,

Attach. 2.

Ordinarily, an agency must respond to a FOIA request within 20 business days. *See* 5

U.S.C. § 552(a)(6)(A)(i) (directing agency to "determine within 20 days (excepting Saturdays,

Sundays, and legal public holidays) after the receipt of any such request whether to comply with

such request"). This time limitation may be extended to 30 days in "unusual circumstances"

upon written notice to the requester. 5 U.S.C. § 552a(a)(6)(B)(i). If the agency must "search for

and collect the requested records from field facilities or other establishments that are separate from the office processing the request," these are unusual circumstances to justify an extension of time. 5 U.S.C. § 552a(a)(6)(B)(iii).

In this case, the BOP's Central Office is the designated recipient of a FOIA request. Mack Decl. ¶ 4. On the belief that responsive records would be located in plaintiff's central file which was maintained at plaintiff's designated place of incarceration, USP Beaumont, Central Office staff appropriately forwarded his FOIA request to the SCRO for processing. *See id.*, ¶¶ 5, 10. Its need to search for and collect records from USP Beaumont establishes that extraordinary circumstances existed. In the end, it does not appear that the BOP needed additional time: the BOP notified plaintiff by letter dated January 4, 2016 that it would require additional time to respond to his FOIA request, and six business days later, by letter dated January 12, 2016, the BOP released the two SIS reports.

### C. The BOP's Search for Responsive Records

"The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted). An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). A search need not be exhaustive. *See Miller v. U.S. Dep't of State,* 779 F.2d 1378, 1383 (8th Cir. 1995). "The issue in a FOIA case is not whether the [agency's] searches uncovered responsive documents, but rather whether the searches were reasonable." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted).

To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id*. at 127. However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Valencia-Lucena*, 180 F.3d at 326.

Plaintiff raises no objection to the processing of his request or the methods BOP employed to locate responsive records. *See* Pl.'s Supp. Decl. ¶¶ 3-4. He does fault the BOP for its reliance on a declarant who personally did not review his central file or handle any portion of his FOIA request herself. *Id*. ¶¶ 5, 9. "[S]he has no personal knowledge, nor did she confer with someone who did," such that "her declaration of facts [is] twice removed from the people who have personal knowledge of the true fact[s] of the matter." *Id*. ¶ 9.

In a FOIA case, however, "[a]n affiant who is in charge of coordinating an agency's document search efforts is the most appropriate person to provide a comprehensive affidavit ." *Cunningham v. U.S. Dep't of Justice*, 40 F. Supp. 3d 71, 84 (D.D.C. 2014) (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)), *aff'd*, No. 14-5112, 2014 WL 5838164 (D.C. Cir. Oct. 21, 2014). The BOP's declarant is a Paralegal Specialist at SCRO, Mack Decl. ¶ 1, whose statements are "based on [her] review of . . . official [BOP] files and records . . . , [her] personal knowledge, or on the basis of information [she] acquired . . . through the performance of [her] official duties, *id*. ¶ 3. She explains at length the processing of FOIA requests generally, *see id*. ¶¶ 3-8, and the processing of plaintiff's FOIA request specifically, *see id*. ¶¶ 9-11. Her "official duties include supervising the FOIA searches conducted by staff." *Id*.

Declarations "contain[ing] hearsay in recounting searches for documents are generally

acceptable" in FOIA cases, *Kay v. FCC*, 976 F. Supp. 23, 34 n.29 (D.D.C. 1997), *aff'd*, 172 F.3d

919 (D.C. Cir. 1998), and the BOP's supporting declarations are acceptable here.

Plaintiff's principal contention focuses on the results of the search. He claims that the

BOP "has engaged in fabrication of facts and subterfuge to convince this Court the two . . .

Reports provided in response to [FOIA Request 2016-01713] is the 'official Copy' of the reason

the BOP suspended his access to . . . TRULINCS[.]" Pl.'s Opp'n ¶ 1. For example, plaintiff

deems it "obvious [that] the SIS report from FCC-Coleman Medium is <u>not</u> connected to the

current suspension of [his] email" because the investigation had been closed months before his

transfer from FCC Coleman to USP Beaumont. *See* Pl.'s Notice, ECF No. 24 ¶ 4 (emphasis in

original). The second report, he contends, "could <u>not</u> reasonably be considered the document

described by either the Warden [or the] Regional Director's response[] attached to the original

FOIA request. *Id*. ¶ 5 (emphasis in original). Plaintiff appears to seek documents containing the

phrase "written explanation" or "determination by the CEO," Pl.'s Opp'n ¶ 25, or mentioning "a

suspension starting March of 2012 lasting till December 31, 2037," *id*. ¶ 29. Without this precise

language, he concludes that "documents have not been properly released," *id*., and the BOP "has

not adequately searched [for] or produced records responsive to [his] request," *id*. ¶ 25.

The BOP's obligation under the FOIA is to conduct a reasonable search for responsive

records. "[T]he issue to be resolved is not whether there might exist any other documents

possibly responsive to the request, but rather whether the search for those documents was

adequate." *Weisberg*, 705 F.2d at 1351 (citing *Perry*, 684 F.2d at 128). Plaintiff's mere

"speculation as to the existence of additional records . . . does not render the search[]

inadequate." *Concepción v. FBI*, 606 F. Supp. 2d 14, 30 (D.D.C. 2009); *see Baker & Hostetler*

*LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (finding the requester's

"assertion that an adequate search would have yielded more documents is mere speculation" and

affirming district court's decision that agency's search procedure was "reasonably calculated to

generate responsive documents").   The Court concludes that the BOP's search for responsive

records was reasonable under the circumstances of this case.

*D. FOIA Exemption 7*

The BOP invokes FOIA Exemptions 7(C), 7(E) and 7(F) in withholding portions of the

two reports.  Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes," 5 U.S.C. § 552(b)(7), but only to the extent that disclosure of such

records would cause an enumerated harm, *see FBI v. Abramson*, 456 U.S. 615, 622 (1982).  "To

show that . . . documents were compiled for law enforcement purposes, the [agency] need only

establish a rational nexus between the investigation and one of the agency's law enforcement

duties and a connection between an individual or incident and a possible security risk or

violation of federal law."  *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation

marks and citations omitted).

The BOP's supporting declarations presume that FOIA Exemption 7 applies, yet neither

declaration actually states that the two reports were compiled for law enforcement purposes.  Nor

do the declarations explain that disclosure of certain redacted information would cause an

enumerated harm.  If the BOP were to demonstrate that the SIS reports were compiled for law

enforcement purposes, it also may demonstrate that its decision to withhold "other inmate's

names, register numbers, third-party names, dates of birth, addresses, and telephone numbers"

under FOIA Exemption 7(C), Supp. Mack Decl. ¶ 7, is justified, *see SafeCard Servs.*, 926 F.2d at

1206 (finding that agency may show that disclosure of identities of individuals mentioned in law

enforcement files are categorically exempt from disclosure as an unwarranted invasion of privacy). Its duty with respect to FOIA Exemptions 7(E) and 7(F) would require greater detail.

FOIA Exemption 7(E) is designed to protect "techniques and procedures for law enforcement investigations or prosecutions, or . . . guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). It is not enough to assert in a conclusory fashion that the BOP has withheld "interviews of other inmates, inmates' statements, and confidential informant statements" under FOIA Exemption 7(E), Supp. Mack Decl. ¶ 8, without, for example, "provid[ing] evidence from which the Court can deduce something of the nature of the techniques in question." *Clemente v. FBI*, 741 F. Supp. 2d 64, 88 (D.D.C. 2010).

With respect to FOIA Exemption 7(F), the Court ordinarily would look for a "nexus between disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm." *Antonelli v. Fed. Bureau of Prisons*, 623 F. Supp. 2d 55, 58 (D.D.C. 2009) (citing *Albuquerque Pub. Co. v. U.S. Dep't of Justice*, 726 F. Supp. 851, 858 (D.D.C. 1989)). The language of the supporting declaration, *see* Supp. Mack Decl. ¶ 9, is so broad that the Court cannot determine whether disclosure of certain information "could reasonably be expected to endanger the life or physical safety of any individual," 5 U.S.C. § 552(b)(7)(F).

### III. CONCLUSION

The Court concludes that the BOP conducted an adequate search for records responsive to plaintiff's FOIA request and that it does not adequately explain its reasons for withholding certain information under FOIA Exemptions 7(C), 7(E) and 7(F). Therefore, the Court will grant defendant's motion in part and deny the motion in part without prejudice.

It is hereby

11

ORDERED that Defendant's Renewed Motion for Summary Judgment [27] is

GRANTED IN PART.  The BOP timely responded to plaintiff's FOIA request and its search for

responsive records was adequate.  Its motion is DENIED IN PART WITHOUT PREJUDICE

because it fails to demonstrate that it properly redacted information under FOIA Exemptions

7(C), 7(E) and 7(F).  It is further

ORDERED that defendant shall file a renewed summary judgment motion no later than

August 14, 2017, with a supporting declaration explaining its decisions to withhold information

under the claimed exemptions.

SO ORDERED.



DATE: July 11, 2017                    /s/
                                       COLLEEN KOLLAR KOTELLY
                                       United States District Court Judge