UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ISAAC KELVIN ALLEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 16-0708 (CKK) |
| | : | |
| FEDERAL BUREAU OF PRISONS, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

Isaac Kelvin Allen brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the Federal Bureau of Prisons ("BOP"), a component of the United States Department of Justice ("DOJ"). This matter is before the Court on Defendant's Third Renewed Motion for Summary Judgment, ECF No. 49, and its four supporting declarations.[1]

---

[1] Defendant incorporates its prior dispositive motions by reference, *see* Def.'s Mot. at 1 n.1, and relies on four declarations of Viola Mack, a Paralegal Specialist at the BOP's South Central Regional Office:

- Declaration of Viola Mack, ECF No. 11-2 ("First Mack Decl.")
- Supplemental Declaration of Viola Mack, ECF No. 27-3 ("Supp. Mack Decl.")
- Supplemental Declaration of Viola Mack in Response to Court's Memorandum Opinion and Order of July 11, 2017, ECF No. 39-1 ("2d Supp. Mack Decl.")
- Third Supplemental Declaration of Viola Mack in Response to Court's Memorandum Opinion and Order of February 15, 2018, ECF No. 49-1 ("3d Supp. Mack Decl.").

In addition, the Court considers the following documents and their attachments/exhibits:

- Compl., ECF No. 1
- Defendant's Second Renewed Motion for Summary Judgment, ECF No. 39
- Request to Deny Defendant's Second Renewed Motion for Summary Judgment, ECF No. 42
- Reply in Support of Defendant's Second Renewed Motion for Summary Judgment, ECF No. 43
- Defendant's Third Renewed Motion for Summary Judgment, ECF No. 49
- Opposition to Defendant's Third Renewed Motion for Summary Judgment, ECF No. 51
- Reply in Support of Defendant's Third Renewed Motion for Summary Judgment, ECF No. 54

For the reasons discussed below, the Court will grant the motion in part and deny the motion in part without prejudice.

I. BACKGROUND

  *A. Plaintiff and his FOIA Request*

Plaintiff was convicted in the United States District Court for the Middle District of Florida for making false statements, *see* 18 U.S.C. § 1014, and aggravated identity theft, *see* 18 U.S.C. § 1028A(a)(1), and is serving a 198-month term of incarceration. *See* First Mack Decl. ¶ 2. He was designated to a Federal Correction Complex ("FCC") in Coleman, Florida from March 2008 through February 2012. Supp. Mack Decl. ¶ 2. In February 2012, he was transferred from FCC Coleman to the United States Penitentiary in Beaumont, Texas ("USP Beaumont"), *id.* ¶ 2, and in February 2018 to the Federal Correctional Institution in Jesup, Georgia, 3d Supp. Mack Decl. ¶ 8.

The Trust Fund Limited Inmate Computer System ("TRULINCS") is a system through which inmates in BOP custody "manage their contact list[s] (email[,] postal mail, telephone and video sessions), communicate with the public via email, view financial account transactions, print postal mailing labels, perform electronic law library research, [and] manage their finances." 2d Supp. Mack Decl. ¶ 10; *see generally* Program Statement 4500.11, <u>Trust Fund/Deposit Fund Manual</u>, Ch. 14 (Apr. 9, 2015). "Plaintiff's access to the []BOP's TRULINCS messaging system is under a 21 year suspension[.]" Compl. ¶ 6. Plaintiff claims that he "has never been presented an official copy of the reason" for the TRULINCS suspension, *id.*, and by means of a FOIA request to BOP's Central Office in December 2015, First Mack Decl. ¶ 9, plaintiff sought a written explanation, Compl. ¶ 10; *see* First Mack Decl., Attach. 2 at 1.

*B. BOP's Search for and Release of Responsive Records*

BOP Central Office staff determined that records responsive to the request, assigned tracking number 2016-01713, most likely would be found in plaintiff's central file, First Mack Decl. ¶¶ 10-11, which would have been maintained at plaintiff's then-current designated institution, *id*. ¶ 10, USP Beaumont, *id*. ¶ 2. Accordingly, Central Office staff forwarded the request to the South Central Regional Office ("SCRO"), *id*. ¶¶ 6, 9, in Grand Prairie, Texas, *id*. ¶ 1, for processing. SCRO staff, in turn, contacted the Legal Liaison at the FCC Beaumont by email with instructions to search plaintiff's central file. *Id*. ¶ 10.

The search yielded copies of two reports totaling 11 pages. *See id*. ¶ 12; Supp. Mack Decl. ¶ 5. The first was a "Special Investigative Services SIS Report ('SIS Report') . . . describing the investigation of [p]laintiff's identity theft and tax fraud scheme" that FCC Coleman staff conducted and which concluded in July 2011. Supp. Mack Decl. ¶ 5.a. The last page indicated that the SIS Report had four attachments: Threat Assessment Checklist, Detention Order, Staff Memorandum, and SENTRY Data. 2d Supp. Mack Decl. ¶ 6; *id*., Ex. 1 at 8. None of the SIS Report's attachments was found in plaintiff's central file. *Id*. ¶ 6. The second report was "titled TRULINCS Restricted or Limited Access Request ('TRULINCS Report'), from USP Beaumont, which was generated in February – March 2012[.]" Supp. Mack Decl. ¶ 5.b. On January 12, 2016, BOP released two pages in full, released seven pages in part, and withheld two pages in full, First Mack Decl. ¶ 12, relying on FOIA Exemptions 7(C), 7(E) and 7(F), Supp. Mack Decl. ¶ 6.

"Upon further consultation with BOP staff," BOP's declarant learned that the SIS Report's attachments "might . . . be located in a separate SIS file at [FCC Coleman] where [p]laintiff [had been] confined and where the investigation took place." 3d Supp. Mack Decl. ¶

3

10. She then "directed SIS staff at FCC Coleman to search for the missing attachments . . . or any other responsive records in that file[.]" *Id*. This search yielded 131 more pages "comprising the four missing attachments to the SIS report[.]" *Id*. On April 13, 2018, BOP hand delivered to plaintiff a three-page "threat assessment checklist" in full and the remaining attachments in part, relying on FOIA Exemptions 7(C) and 7(F). *See id*. ¶¶ 11, 13-16.

*C. Defendant's Dispositive Motions*

Defendant has filed four dispositive motions. Initially defendant moved to dismiss or for summary judgment arguing that plaintiff had not exhausted his administrative remedies prior to filing this action. *See* Def.'s Mot. to Dismiss or Alternatively for Summ. J. (ECF No. 11). Defendant withdrew this motion, *see* Def.'s Notice of Withdrawal of Mot. to Dismiss (ECF No. 19), and filed a renewed summary judgment motion, *see* Def.'s Renewed Mot. for Summ. J. (ECF No. 27), on December 8, 2016. Plaintiff opposed the motion, *see* Request to Deny Def.'s Renewed Mot. for Summ. J. (ECF No. 29) on January 17, 2017, and on July 11, 2017, the Court granted the motion in part and denied it in part, *see* Mem. Op. and Order (ECF No. 36), concluding that BOP's search of plaintiff's central file for records responsive to his FOIA request was adequate and that its explanation for withholding certain information under Exemptions 7(C), 7(E) and 7(F) was insufficient.

Defendant's third motion, *see* Def.'s Second Renewed Mot. for Summ. J. (ECF No. 39), addressed the exemptions, and plaintiff filed his opposition on December 4, 2017, *see* Request to Deny Def.'s Second Renewed Mot. for Summ. J. (ECF No. 42, "Pl.'s Opp'n to 2d Renewed Mot."). Regarding the SIS Report, BOP's declarant stated:

> Page 8 of the SIS Report identifies four attachments: (1) threat assessment checklist; (2) detention order; (3) staff memorandum; and (4) SENTRY Data. *This information was withheld inadvertently in the prior release*. At the request of counsel, I

> checked with the [SCRO], where [p]laintiff's central file was located, and confirmed that the referenced attachments are not contained in [p]laintiff's central file . . . . BOP produced all of the records responsive to Plaintiff's request that BOP had located in its search.

2d Supp. Mack Decl. ¶ 6 (emphasis added).[2] The Court construed this statement to mean that BOP deemed the attachments responsive to plaintiff's FOIA request, and for reasons unknown withheld them. Accordingly, the Court denied the motion without prejudice, and directed BOP to explain why its obligations under the FOIA end because records it admittedly should have released were not in plaintiff's central file.

Defendant's fourth motion and supporting declaration clarify that the only information BOP inadvertently withheld was four lines of text identifying the attachments:

> Attachments: Threat Assessment Checklist
> Detention Order
> Staff Memorandum
> SENTRY Data

2d Supp. Mack Decl., Ex. 1 at 8; *see* Def.'s Mot. at 2-3. The attachments themselves subsequently were located in SIS records at FCC Coleman and released in part. 3d Supp. Mack Decl. ¶¶ 10-11.

II. DISCUSSION

 *A. Adequacy of BOP's Searches*

Now that BOP "broadened its search for the missing attachments to the SIS Report," Def.'s Mot. at 3, defendant moves "for summary judgment on the adequacy of its expanded search," *id*. at 4. Plaintiff "takes serious issue with defendant's supplemental search, and the 131 pages of responsive records released." Opp'n to Def.'s Third Renewed Mot. for Summ. J. (ECF

---

[2] According to the declarant, an "SIS Lieutenant clarified that the reference to 'staff memorand[a]' in attachment 3 actually referred to staff e-mails, as there were no additional staff memorand[a] associated with the investigative report." 3d Supp. Mack Decl. ¶ 10.

5

No. 51, "Pl.'s Opp'n") ¶ 9. He deems defendant's recent effort "an unsolicited extensive multi-institutional supplemental search outside of [his] central file," *id.* ¶ 8, which served only to "create[] substantial doubt as to the sufficiency of the initial search," *id.* If the Court were to grant defendant's fourth dispositive motion, he argues, its ruling "would be the second summary judgment imposed on this same issue," *id.* ¶ 6 (emphasis in original), the adequacy pf BOP's search. In order that the Court avoid issuing an "improper" order, *id.*, plaintiff "asks the Court to vacate" its prior ruling, *id.* ¶ 9 (emphasis removed), and allow him "time to issue a challenge to the supplemental release," *id.*, after which the Court can issue a single "final ruling on the full proceeding of the entire search, and subsequent release," *id.*

Plaintiff suggests bad faith on the part of BOP, yet he neither argues that BOP's search of SIS records at FCC Coleman was unreasonable nor identifies his "serious issue" with this "supplemental search." Based on the declarant's explanation that records pertaining to an inmate routinely are maintained in his central file, *see* First Mack Decl. ¶ 10, it is reasonable for BOP staff to have searched the central file for records responsive to plaintiff's FOIA request. The fact that the attachments to the SIS Report were not found in plaintiff's central file does not undermine the reasonableness of the decision to search the central file initially. And the Court does not fault BOP for having conducted a supplemental search prompted by the Court's mistaken impression that it had located responsive records in plaintiff's central file and withheld them without explanation. The Court declines plaintiff's invitation to vacate its prior ruling, and concludes that BOP's supplemental search of SIS records, too, was reasonable.

Defendant accomplishes what plaintiff himself demanded – that BOP locate and release the attachments to the SIS Report. *See* Pl.'s Opp'n to 2d Renewed Mot. ¶ 6; *id.* at 7 (demanding release of the TRULINCS Report in its entirety). If anything, the belated release of the SIS

Report's attachments suggests a good faith effort to locate and release records responsive to plaintiff's FOIA request. *See Nat'l Inst. of Military Justice v. Dep't of Defense*, 404 F. Supp. 2d 325, 333-34 (D.D.C. 2005).

*B. Exemption 7*

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). BOP continues to rely on Exemptions 7(C), 7(E) and 7(F) to justify its decision to withhold certain information from the SIS and TRULINCS Reports. Supp. Mack Decl. ¶¶ 6-9; 2d Supp. Mack Decl. ¶¶ 11-19. Now that BOP has located the four attachments to the SIS Report, defendant moves for summary judgment, arguing that it properly relies on Exemptions 7(C) and 7(F) in withholding certain information from its supplemental release of the SIS Report's attachments, *See* Def.'s Mot. at 4-5.

As plaintiff correctly notes, *see* Pl.'s Opp'n ¶¶ 14-16, the Court denied defendant's prior motions without addressing the merits of its Exemption 7 argument. The record of this case reflects that the matter has been briefed fully. With respect to BOP's initial release of the SIS and TRULINCS reports, plaintiff opposes, *see* Pl.'s Opp'n to 2d Renewed Mot. ¶¶ 10-18, defendant's arguments for withholding information under Exemption 7, *see* Def.'s Second Renewed Mot. for Summ. J. at 5-8. Plaintiff's response to BOP's supplemental release of the SIS Report's attachments neither mentions Exemption 7 nor demonstrates that BOP's assertions of fact are untrue. The Court declines to extend to plaintiff a second opportunity to make arguments he could have presented by now.

1. Law Enforcement Records

Exemption 7 applies to law enforcement records. "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

BOP's declarant explains that "BOP is a law enforcement agency," the employees of which "perform inherent law enforcement functions." 2d Supp. Mack Decl. ¶ 7. For example, BOP officers are authorized to make arrests, search inmates and visitors to BOP institutions, seize evidence, and otherwise "protect[] inmates, staff, and the community." *Id*. Further, the declarant explains that the SIS and TRULINCS Reports at issue in this case "were compiled for law enforcement purposes to meet the BOP's responsibility to provide for the safekeeping of inmates within its facilities, and enforce the prevention of criminal activities." *Id*. ¶ 8. Plaintiff concurs that BOP is a law enforcement agency, *see* Pl.'s Opp'n to 2d Renewed Mot. ¶ 15, as does the Court.

With respect to the SIS Report, the declarant explains:

> BOP Special Investigative Services (SIS) staff at FCI Coleman (Medium) conducted an investigation of Plaintiff's continued filing of fraudulent tax returns and his instructing other inmates at FCI Coleman (Medium) how to file fraudulent tax returns. SIS staff conducted this investigation and prepared the SIS report for the safekeeping, protection and discipline of inmates in BOP custody, as provided in 18 U.S.C. § 4042. The SIS Report summarized interviews conducted and findings made during the investigation and concluded that Plaintiff and other inmates were engaged in criminal activity. The SIS Report also made recommendations

> regarding transfers and conditions of confinement for Plaintiff[] and
> the other inmates involved.

2d Supp. Mack Decl ¶ 9. For these reasons, the declarant states, the SIS Report was compiled for law enforcement purposes. *Id*. Plaintiff concurs. *See* Pl.'s Opp'n to 2d Renewed Mot. ¶ 9. It follows that the attachments to the SIS Report also were compiled for law enforcement purposes.

The TRULINCS Report came about after SIS staff at FCC Beaumont reviewed the SIS Report, plaintiff's criminal history, and his disciplinary record while in BOP custody. *See* 2d Supp. Mack Decl. ¶ 10. Plaintiff had been convicted of fraud-related crimes, filed fraudulent income tax returns from prison, and had committed disciplinary infractions "ranging from phone abuse, refusing to obey an order, disruptive conduct, counterfeiting or forging documents, using unauthorized equipment[ and/or] machinery (saving information on the computer in the education department where he worked as an orderly), using mail without authorization, and lying or falsifying statements." *Id*. Based on these factors, FCC Beaumont staff recommended, and the Warden concurred, that "[p]laintiff have restricted access to [TRULINCS] upon his arrival [at USP] Beaumont[.]" *Id*.; *see id*. ¶ 9. According to the declarant, the TRULINCS Report was compiled for a law enforcement purposes "of managing [USP] Beaumont . . . and providing for the safekeeping, protection and discipline of inmates housed" at USP Beaumont. 2d Supp. Mack Decl. ¶ 10.

Plaintiff disputes that the TRULINCS report was compiled for law enforcement purposes. *See* Pl.'s Opp'n to 2d Renewed Mot. ¶¶ 10, 13. He argues that access to TRULINCS is a privilege, *id.* ¶ 14, the suspension of which "does not implicate due process concerns, and thus, alone can not [sic] trigger a law enforcement function," *id*. ¶ 14; *see id*. ¶ 16. In his view, suspension of TRULINCS access upon his arrival at USP Beaumont, *id*. ¶ 16, and a staff

9

"request for engagement in general monitoring of plaintiff's activities," *id*. ¶ 18, are not law enforcement functions.  Citing *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982), plaintiff deems the TRULINCS Report a mere "request for engagement in general monitoring of plaintiff's activities," Pl.'s Opp'n to Def.'s 2d Renewed Mot. ¶ 18.  If the TRULINCS Report itself did not arise from an investigation, plaintiff argues that BOP cannot rely on Exemption 7 to withhold any information from it.  *Id*.

A "possible violation or security risk is necessary to establish that the agency acted within its principal function of law enforcement, rather than merely engaging in a general monitoring of private individuals' activities."  *Pratt*, 673 F.2d at 420.  Plaintiff is not simply a private individual whose activities are monitored by a law enforcement agency.  Rather, plaintiff is a federal prisoner whose offense of conviction included identity theft.  Even if denying plaintiff TRULINCS access required extra monitoring of his activities, it is apparent that BOP engages in a law enforcement function when it takes steps to detect or prevent criminal conduct by an inmate, particularly an inmate whose incarceration did not deter him from filing fraudulent tax returns and instructing his fellow inmates to do so.  The Court concludes that the TRULINCS Report was compiled for law enforcement purposes and thus falls within the scope of Exemption 7.  *See Pinson v. Dep't of Justice*, 313 F. Supp. 3d 88, 114 (D.D.C. 2018) (concluding that records "pertain[ing] to how BOP handles threats to security, how it monitors and maintains the health and safety of its inmates and staff, and how it investigates criminal activity [] were created by BOP to fulfill its responsibility of protecting inmates and prison staff" for purposes of Exemption 7).

The information BOP withheld pertained "to specific concerns of FCI Coleman (Medium) staff regarding the safety and privacy interests of individuals, the continued safe

operation of the facility, and preserving law enforcement techniques and procedures." 2d Supp. Mack Decl. ¶ 19. Although plaintiff had opportunities to challenge defendant's reliance on Exemptions 7(C), 7(E) and 7(F) with respect to SIS Report, *see id*. ¶¶ 12, 14, 16, Exemption 7(F) with respect to the TRULINCS Report, *see id*. ¶¶ 16-17, and Exemptions 7(C) and 7(F) with respect to the attachments to the SIS Report, *see* 3d Supp. Mack Decl. ¶¶ 14-16, he failed to do so. The Court now considers these exemptions without the benefit of plaintiff's position.

2. Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether this exemption applies to particular information, the Court must balance the privacy interest of individuals mentioned in the records against the public interest in disclosure. *See Am. Civil Liberties Union v. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). The privacy interest at stake belongs to the individual, not the government agency, *see Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). When balancing an individual's privacy interest against the public interest in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773).

From the SIS Report BOP withheld the "names and register numbers of other inmates besides [p]laintiff who were involved in the investigation and mentioned in the report; third party family members and associates of inmates involved in the investigation and mentioned in the

11

report; and other identifying information of said individuals (e.g., addresses, e-mail addresses, phone numbers, nicknames, their relationships to the inmates)." 2d Supp. Mack Decl. ¶ 12; *see* Supp. Mack Decl. ¶ 7. According to the declarant, "BOP determined that these individuals had a clear privacy interest" in this identifying information and found no public interest in its release. 2d Supp. Mack Decl. ¶ 12. Plaintiff raised no objection to these redactions from the SIS Report. Pl.'s Opp'n to 2d Renewed Mot. ¶ 9.

From the SIS Report's attachments, BOP withheld in full the detention orders of inmates other than plaintiff on the ground that release of this information could reasonably be expected to constitute an unwarranted invasion of these inmates' personal privacy. *See* 3d Supp. Mack Decl. ¶ 14; *see also* 2d Supp. Mack Decl. ¶ 12. On this same rationale, BOP redacted the names of and identifying information about inmates other than plaintiff from staff memoranda, 3d Supp. Mack Decl. ¶ 15, and from SENTRY data, *id*. ¶ 16, to include the full roster of inmates designated to FCC Coleman (Medium), their register numbers, social security numbers, and dates of birth, *id*.

In this Circuit, there exists "a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991)) (additional citation omitted). Plaintiff has made no such showing, and the Court is satisfied that there is no public interest in disclosure to outweigh these third parties' privacy interest. BOP adequately demonstrates that its decision to withhold the names of and other personally identifying information about third parties mentioned in the SIS Report and attachments is proper.

3. Exemption 7(E)

Exemption 7(E) protects "information compiled for law enforcement purposes," the release of which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). BOP relies on Exemption 7(E) as the declarant explains:

> In this matter, BOP withheld from the SIS Report . . . information concerning [the] investigative and interviewing techniques used in conducting the investigation of identity theft[] and tax fraud scheme perpetuated by [p]laintiff and other inmates at FCI Coleman (Medium). This information was withheld because disclosure would reveal how information was received and collected from inmates and other sources during the investigation, which, if disclosed, would allow inmates to use the information in an attempt to conceal their misconduct in the prison system and to evade detection of law enforcement officials.

2d Supp. Mack Decl. ¶ 14; *see* Supp. Mack Decl. ¶ 8.

BOP adequately meets Exemption 7(E)'s "relatively low bar," *Blackwell*, 646 F.3d at 42, because its declarant "demonstrate[s] logically how the release of the requested information might create a risk of circumvention of the law," *id*. (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009). Investigative and interview techniques qualify for protection under Exemption 7(E). *See Frank LLP v. Consumer Fin. Prot. Bureau*, 327 F. Supp. 3d 179, 183 (D.D.C. 2018) (withholding "portions of two investigational hearing transcripts" which contained "the specific questions asked by Bureau investigators of two . . . affiants, including the specific information and types of information sought, the manner of questioning, the sequencing of questioning, and the manner and sequencing of follow-up questions on specific items of interest," and which, if disclosed, could be used to "coach future witnesses in similar cases on how to avoid providing incriminating information"); *Barouch v. U.S. Dep't of Justice*, 87 F.

Supp. 3d 10, 30 n.13 (D.D.C. 2015) (withholding information about "questioning techniques used by the ATF agents and local law enforcement agents," noting that "disclosure of how law enforcement agents and officers question suspects and the tactics they use could lead to criminals using maneuvers to circumvent the law enforcement measures[]").

        4. Exemption 7(F)

Under Exemption 7(F), an agency may withhold records or information compiled for law enforcement purposes if disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "In general, this exemption has been interpreted to apply to names and identifying information of law enforcement officers, witnesses, confidential informants and other third persons who may be unknown to the requester." *Antonelli v. Fed. Bureau of Prisons*, 623 F. Supp. 2d 55, 58 (D.D.C. 2009) (citations omitted). The Court considers whether the agency demonstrates "the requisite nexus between disclosure and possible harm" to an individual. *Albuquerque Pub. Co. v. U.S. Dep't of Justice*, 726 F. Supp. 851, 858 (D.D.C. 1989).

From the SIS and TRULINCS Reports, BOP withholds Central Inmate Monitoring (CIM) information about plaintiff under Exemption 7(F). 2d Supp. Mack Decl. ¶ 16. The declarant explains that plaintiff "presented a special need[]" calling for "a higher level of review" of matters such as "clearances for transfers" to other BOP facilities. *Id*. In light of the SIS Report's finding that plaintiff "was disrupting the secure and orderly running of FCI Coleman" by means of his fraudulent activities," the declarant states that BOP provided CIM "monitoring . . . to provide protection to all concerned and to contribute to the safe and orderly operation of federal institutions." *Id*. The declarant does not explain, however, how release of CIM information pertaining to plaintiff potentially endangers the life or physical safety of any individual.

14

BOP also withholds from the SIS and TRULINCS Reports "the name[s], register number[s] and other identifying information of individuals who cooperated with prison officials and provided information to investigators about the identification theft and tax fraud scheme at FCI Coleman." *Id*. ¶ 17. Release of these inmates' identities, the declarant states, "could jeopardize [their] safety . . . as it likely would result in harassment, threats and/or retaliation from [p]laintiff and other inmates who were the subject[s] of the investigation." *Id*. Such threats "include possible physical assaults," which themselves pose a safety risk to these individuals, other inmates and BOP staff. *Id*. ¶ 18. Further, disclosure of this information could allow plaintiff, the other inmates involved in the scheme or their associates to contact one another "in an attempt to circumvent security measures[prohibiting] inmate-to-inmate correspondence absent written staff authorization," which in turn "could undermine the ability of BOP staff to control security and good order, not just at FCI Coleman (Medium), but also at any other facility . . . where the individuals involved in the investigation are currently housed, or later transferred." *Id*. Lastly, the declarant asserts that disclosure of these individuals' identities "may discourage other inmates from cooperating with future BOP investigations, which may result in future harm to the safety of BOP staff, inmates, and the public." *Id*.

Based on this same rationale, BOP relies on Exemption 7(F) in conjunction with Exemption 7(C) to withhold in full the detention orders of other inmates, 3d Supp. Mack Decl. ¶ 14, to redact staff memoranda, *id*. ¶ 15, and to withhold SENTRY data in full, *id*. ¶ 16, in order to protect other inmates' names, register numbers, social security numbers, and dates of birth. The declarant notes that plaintiff's transfer to USP Beaumont "does not alleviate the concerns expressed by staff at FCI Coleman (Medium) regarding the physical safety of individuals housed

at that facility and the potential for violence at other BOP facilities where these individuals may currently be housed or [to which they may be] transferred." 2d Supp. Mack Decl. ¶ 18.

The Court concludes that BOP properly withholds under Exemption 7(F) identifying information about individuals who involved themselves in plaintiff's schemes and who cooperated with or were subjects of the SIS investigation. *See Berard v. Fed. Bureau of Prisons*, 209 F. Supp. 3d 167, 174 (D.D.C. 2016) (withholding confidential informant's name, confidential identification number and information he or she provided to BOP because its release "would readily reveal the source's identity"); *Carbe v. Bureau of Alcohol, Tobacco & Firearms*, No. 03-cv-1658, 2004 WL 2051359, at *12 n.9 (D.D.C. Aug. 12, 2004) (approving the withholding of "information about informants who could be at risk in a prison setting were other inmates to know that they testified against or provided information concerning another individual"). With respect to CIM information, however, BOP does not demonstrate adequately that its release poses a risk to any individual's life or physical safety.

## III. CONCLUSION

The Court concludes that BOP's search for records responsive to plaintiff's FOIA request, including its search of SIS records, was reasonable and that its reliance on Exemptions 7(C), 7(E) and 7(F) is proper, with one exception: BOP does not explain adequately that release of CIM information could reasonably be expected to endanger the life or physical safety of any individual.

Accordingly, it is hereby

ORDERED that the Defendant's Third Renewed Motion for Summary Judgment [49] is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE. It is further

ORDERED that, by March 7, 2019, defendant shall file its renewed summary judgment motion.

SO ORDERED.

DATE: February 8, 2019

/s/
COLLEEN KOLLAR KOTELLY
United States District Court Judge