UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ISAAC KELVIN ALLEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 16-0708 (CKK) |
| | : | |
| FEDERAL BUREAU OF PRISONS, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552. This matter is before the Court on Defendant's Sixth Renewed Motion for Summary Judgment (ECF No. 87). For the reasons discussed below, the Court grants the motion.[1]

## I. BACKGROUND

### A. Suspension of Plaintiff's TRULINCS Privileges

On January 15, 2008, in the United States District Court of the Middle District of Florida, plaintiff was sentenced to a 198-month term of imprisonment, having been convicted of making false statements and aggravated identity theft. *See* Mack Decl. (ECF No. 64-3) ¶ 2; Nylen Decl. (ECF No. 64-9) ¶ 6. While in the custody of the Federal Bureau of Prisons ("BOP"), plaintiff "was filing fraudulent tax returns and instructing other inmates how to file fraudulent tax returns." Nylen Decl. ¶ 11. These activities resulted in disciplinary action when plaintiff was found to have committed the following prohibited acts:

---

[1] The Court considered the following documents and their attachments/exhibits:

- Complaint (ECF No. 1)
- Defendant's Fifth Renewed Motion for Summary Judgment (ECF No. 64)
- Defendant's Sixth Renewed Motion for Summary Judgment (ECF No. 87)

1

- Counterfeiting or Forging Document
- Lying or Falsifying Statement
- Using Mail without Authorization
- Using Unauthorized Equipment
- Disruptive Conduct – Greatest[2]

*Id.* ¶ 10; *see generally id.*, Attach. 2 (Chronological Disciplinary Record).

Through the Trust Fund Limited Inmate Communication System ("TRULINCS"), inmates in BOP custody may communicate with citizens outside a facility via email. Nylen Decl. ¶ 3. "BOP can limit or suspend TRULINCS privileges if an inmate's current offense of conviction or his conduct in BOP custody involved misuse of the computer and/or the TRULINCS system." *Id.* Based on the offenses of conviction and conduct while in BOP custody, BOP suspended plaintiff's TRULINCS privileges for a 21-year period ending on December 31, 2037, Compl. ¶ 6; *see id.*, Attach. 2 (ECF No. 1 at 10).

By letter dated December 7, 2015, plaintiff submitted a FOIA request to BOP, *see* Mack Decl., Attach. 2 (Freedom of Information Act Request) (ECF No. 64-3 at 16), seeking an explanation for suspension of his TRULINCS privileges, *see* Def.'s SMF (ECF No. 87-2) ¶ 5.

**B. Records Responsive to Plaintiff's FOIA Request**

Among other responsive records, BOP located two reports. The first was an eight-page Special Investigative Services Report, SIS Case No. COM-1-11-0047, prepared in July 2011 by D.C. DeCamilla, an SIS Lieutenant at the Federal Correctional Complex in Coleman, Florida, where plaintiff was incarcerated at that time. Supp. Mack Decl. (ECF No. 64-4) ¶ 5.a; *see* Nylen Decl., Attach. 3 (ECF No. 64-9 at 18-25) ("SIS Report"). The SIS Report "describe[ed] the investigation of [p]laintiff's identity theft and tax fraud scheme," Supp. Mack Decl. ¶ 5.a, and

---

[2] BOP's "disciplinary program does not have a specific prohibited act code for the tax fraud scheme [plaintiff] was found to have committed," and his disciplinary report adopts "the prohibited act code of Disruptive Code – Greatest (Code 199)[.]" Nylen Decl. ¶ 10.

"summarized interviews conducted and findings made during the investigation and concluded that [plaintiff was] engaged in criminal activity," 2d Supp. Mack Decl. (ECF No. 64-5) ¶ 9.

The second report bore the title "TRULINCS Restricted or Limited Access Request." Supp. Mack Decl. ¶ 5.b.  Intelligence Research Specialist Robert J. Nylen prepared the report recommending that plaintiff's access to the TRULINCS system be restricted.  *See* Nylen Decl. ¶¶ 1, 5, 16; *id.*, Attach. 1 (ECF No. 64-9 at 10-12) ("TRULINCS Report").  He came to this conclusion after having reviewed plaintiff's Presentence Investigation Report, Chronological Disciplinary Record, the SIS Report, and a Disciplinary Hearing Officer Packet.  *See id.* ¶¶ 6-14. The Disciplinary Hearing Officer Packet, prepared as a result of the SIS Report, contained a "Referral of Inmate Criminal Matter for Investigation" with attachments.  *Id.* ¶ 14; *see id.*, Attach. 4 (ECF No. 64-9 at 44-58) ("Referral").

"When BOP staff determine an inmate has committed a serious act of misconduct while in BOP custody, they prepare a Referral packet with a detailed description of the misconduct and any supporting documents and provide it to federal law enforcement to have the responsible United States Attorney's Office determine whether the inmate should be prosecuted."  Def.'s SMF ¶ 5.  In plaintiff's case, BOP explains, staff prepared the Referral and attached copies of email messages totaling 11 pages, *see* Christenson Decl. (ECF No. 87-3) ¶ 9, "for the purpose of having the United States Attorney's Office determine whether [p]laintiff should be prosecuted for tax and identity fraud," Def.'s SMF ¶ 13.

**C.  Defendant's Sixth Renewed Motion for Summary Judgment**

After the Court's ruling (ECF No. 77) on Defendant's Fifth Renewed Motion for Summary Judgment (ECF No. 64), the only matter remaining for resolution pertained to information about BOP staff members redacted from the Referral's email attachments and the

3

Chronological Disciplinary Report. The Court ordered BOP to release this information in full or, alternatively, to file a sixth renewed motion for summary judgment on this matter only.

BOP hand-delivered an unredacted copy of the Chronological Disciplinary Record to plaintiff on April 3, 2020. *See* Def.'s SMF ¶¶ 1-2; Christenson Decl. ¶¶ 6-7. It chose to file a summary judgment motion (ECF No. 87) on November 5, 2020, arguing that the information in the Referral's attachments about BOP staff members is exempt from disclosure. The Court issued an Order (ECF No. 88) on November 6, 2020, advising plaintiff of his obligation to file an opposition to the motion and setting December 7, 2020, as the deadline for his opposition. The Order advised plaintiff that his failure to file a timely opposition carried with it the risk that the Court would grant BOP's motion and enter judgment in its favor.

Plaintiff was released from BOP custody on August 27, 2020. Christenson Decl. ¶ 2. He filed a motion for an extension of time (ECF No. 89) to file his opposition to defendant's dispositive motion and notified the Clerk of Court of his new address. By Minute Order on December 16, 2020, the Court extended the opposition deadline to January 8, 2021, and the Clerk of Court sent a copy of the Minute Order to plaintiff at his new address. To date, plaintiff has not filed an opposition or other response to BOP's motion.

## II. DISCUSSION

### A. Legal Standard

The Court may grant summary judgment to a government agency as the moving party if the agency shows that there is no genuine dispute as to any material fact and if it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district

courts to 'determine the matter de novo.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

The Court may grant summary judgment based on information in an agency's supporting declarations if they are "relatively detailed and nonconclusory[.]" *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation marks and footnote omitted). Further, the supporting declarations must "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted).

### B. Exemption 7(C)

#### 1. Law Enforcement Records

In the lower left corner of each printed email message appears the "USER ID" of a BOP staff member. *See generally* Christenson Decl., Attach. C (ECF No. 87-3 at 16-26). BOP withholds these USER IDs under Exemptions 6 and 7(C). *See* Def.'s SMF ¶¶ 3-4. Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), and the Court previously concluded that all the records responsive to plaintiff's FOIA request fall within the scope of Exemption 7. *See* Mem. Op. & Order, *Allen v. Fed. Bureau of Prisons*, No. 1:16-cv-0708 (D.D.C. Mar. 13, 2020) (ECF No. 77); Mem. Op. & Order, *Allen v. Fed. Bureau of Prisons*, No. 1:16-cv-0708 (D.D.C. Feb. 8, 2019) (ECF No. 56). Notwithstanding BOP's reliance on both Exemption 6 and Exemption 7(C) to withhold the USER IDs, *see* Def.'s SMF ¶ 4, here the Court focuses exclusively on Exemption 7(C), *see Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) ("If the information withheld here

was 'compiled for law enforcement purposes,' thus implicating Exemption 7(C), then we would have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C).").[3]

### 2. USER IDs

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether this exemption applies to particular information, the Court must balance the privacy interest of individuals mentioned in the records against the public interest in disclosure. *See Am. Civil Liberties Union v. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). The privacy interest at stake belongs to the individual, not the government agency, *see Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). When balancing an individual's privacy interest against the public interest in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773).

BOP explains that each staff member is assigned "a unique USER ID that allows [him or her] to log into BOP's network, including the staff email system known as GroupWise and Sallyport (a platform used by the BOP to distribute information relevant to all staff)." Christenson Decl. ¶ 12. All USER IDs "begin with the same letters but have unique numbers

---

[3] BOP withdrew its reliance on Exemption 7(F) to justify its decision to withhold the USER IDs. *See* Def.'s SMF ¶ 4; Christenson Decl. ¶ 9.

assigned." Def.'s SMF ¶ 7. Each USER ID is unique to an individual, *id.* ¶ 9, and contains "personally identifiable information . . . tied to a specific staff member," *id.* ¶ 10.

A staff member's duties determine which BOP databases he or she may access. *Id.* ¶ 8. "For example, access to the Trust Fund system is limited to Trust Fund staff, Unit Management and Special Investigative staff." Christenson Decl. ¶ 13. "TRULINCS . . . is a part of the Trust Fund system." *Id.* ¶ 11. A staff member with TRULINCS access "receive[s] a separate, unique USER ID that utilizes the same number as [his or her] BOP USER ID, but has different letters." *Id.* ¶ 13. The USER IDs at issue in this case "contain the personally identifiable information . . . of staff who log into the Trust Fund System, including TRULINCS." *Id*. ¶ 19. If the USER IDs were disclosed, the BOP staff member could be identified. *See* Def.'s SMF ¶¶ 9, 14.

"BOP law enforcement officers perform constant monitoring of inmate emails and phone calls to determine if administrative discipline or referral for criminal prosecution is warranted." Def.'s SMF ¶ 15. And if monitoring by BOP staff "result[s] in administrative discipline or criminal prosecution, the targeted inmate may have hostility towards the staff member who monitored his emails." Christenson Decl. ¶ 16. Disclosure, then, could subject these staff members "to harassment, threats or violence both inside the prison and out in the community." *Id*. ¶ 19.

BOP finds that its staff members have a privacy interest in personally identifying information about them. Def.'s SMF ¶ 16. It identifies "no . . . public interest in release of internal USER ID information," as disclosure of USER IDs "would not assist the public in understanding how BOP is carrying out its statutory responsibilities." *Id.* The Court concurs.

"On the privacy side of the ledger, [D.C. Circuit] decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law

enforcement records, including investigators, suspects, witnesses, and informants." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (citations omitted).  This holds true even for BOP staff.  *See Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254–55 (D.C. Cir. 1981) ("It is well established . . . that government officials do not surrender all rights to personal privacy when they accept a public appointment.").  It is plaintiff's obligation to articulate a public interest to outweigh the BOP staff members' privacy interest, and the public interest must be significant.  *See Nat'l Archives and Records Admin. v. Favish,* 541 U.S. 157, 172 (2004).  Plaintiff, who has not responded to BOP's sixth renewed summary judgment motion, fails to make such a showing.

On review of BOP's submission, the Court identifies no public interest in disclosure of the USER IDs, and certainly no public interest sufficient to outweigh the privacy interest of BOP staff members.  BOP adequately demonstrates that its decision to withhold personally identifying information about staff members in the Referral's email attachments under Exemption 7(C) is proper.

### C. Segregability

The Court last duty is to consider whether BOP "disclose[s] all reasonably segregable, nonexempt portions of the requested record(s)." *Assassination Archives & Research. Ctr. v. CIA*, 334 F.3d 55, 58 (D.C. Cir. 2003) (citing 5 U.S.C. § 552(b)); *see Roth*, 642 F.3d at 1167 ("[E]ven if the agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record[s].").  BOP asserts that only the USER IDs appearing in the lower left corner of each page of email attachments are redacted.  *See* Def.'s SMF ¶ 17.  On review of BOP's submission in support of its sixth renewed motion, and its prior

submissions justifying reliance on Exemptions 6, 7(C), 7(E), and 7(F), the Court concludes that BOP has released all reasonably segregable information responsive to plaintiff's FOIA request.

## III.  CONCLUSION

This years-long case has come to an end.  BOP has shown that no genuine issue of material fact is in dispute and that it is entitled to judgment as a matter of law.  Therefore, the Court GRANTS Defendant's Sixth Renewed Motion for Summary Judgment.  An Order is issued separately.

/s/
COLLEEN KOLLAR KOTELLY
United States District Judge

DATE: March 24, 2021